IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 4, 2020

**STATE OF TENNESSEE v. DEVONTA KEVON CURRY**

**Appeal from the Circuit Court for Madison County**
**No. 18-551    Roy B. Morgan, Jr., Judge**

_____

**No. W2019-00679-CCA-R3-CD**

_____

The Defendant-Appellant, seventeen-year-old Devonta Kevon Curry, was transferred from juvenile court and convicted by a Madison County jury of aggravated burglary (count one); aggravated robbery (counts two, five, and six); especially aggravated kidnapping (counts three and four); and possession of a firearm during the commission of a dangerous felony (count seven). See Tenn. Code Ann. §§ 39-14-403, -13-402, -13-305; 39-17-1324(a). Following a sentencing hearing, the trial court imposed a five-year term of imprisonment for the aggravated burglary; a concurrent ten-year term of imprisonment for each count of aggravated robbery; a concurrent twenty-year term of imprisonment for each count of especially aggravated kidnapping; and a three-year term of imprisonment for the possession of a firearm during the commission of a dangerous felony, to be served consecutively to the aggravated burglary. See Tenn. Code Ann. § 39-17-1324(e)(1). The concurrent ten-year term of imprisonment for the aggravated robbery convictions was ordered to be served consecutively to the concurrent twenty-year term of imprisonment for the especially aggravated kidnapping convictions, for an effective sentence of thirty years' imprisonment.[1] On appeal, the Defendant challenges the sufficiency of the evidence regarding each of his convictions arguing that (1) the State failed to establish his identity as the perpetrator of the offense; and (2) the especially aggravated kidnapping convictions were merely incidental to the aggravated robberies in violation of State v. White, 362 S.W.3d 559 (Tenn. 2012). The Defendant also appeals the order of consecutive sentencing, arguing that the trial court failed to make sufficient findings of fact in classifying him as a dangerous offender and that the trial court failed to apply certain mitigating factors. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgments of the Circuit Court Affirmed**

_____

[1] The trial court expressly noted during the sentencing hearing and in the relevant judgment forms that the possession of a firearm during the commission of a dangerous felony conviction was aligned consecutively only to the aggravated burglary conviction and that this eight-year term of imprisonment was to be served concurrently to the remaining sentences.

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

George Morton Googe, District Public Defender, and Jeremy B. Epperson, Assistant Public Defender, for the Defendant-Appellant, Devonta Kevon Curry.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Jody Pickens, District Attorney General; and Eric Wood, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Around 10:15 on the night of December 27, 2017, Shirley Wallace, the homeowner victim, came home to find a stranger, later identified as the Defendant, in her house, pointing a handgun at her face. The Defendant threatened to kill Wallace[2] if she did not give him her money; however, Wallace only had her debit card. The Defendant then ordered Wallace "to go into the other room" or he would kill her. Wallace did not know to which room he referred, but the Defendant directed her through the breakfast area and down the hall. He stopped her at the family game room, where Wallace observed her teenage granddaughter's backpack in a chair. The Defendant emptied the backpack and ordered Wallace to fill it with things from the room including an Xbox, a PlayStation gaming system, cords, and other video games. As Wallace attempted to comply, she was "kind of close" to the Defendant and said, "I'm praying for you, and please don't kill me because I have a granddaughter to raise." At this point, Wallace's teenage granddaughter, MT, and her male, teenage friend, JH, entered the room. The Defendant pointed the gun at them and demanded that they remove their clothing and stay in the room. When the Defendant finished taking their belongings, the Defendant ordered the victims to go into the laundry room near the garage and remain there with their hands up until he left. The Defendant demanded Wallace's car keys, and when she could not find them, the male teenage victim gave the Defendant the keys to his car, which he had left running outside. The Defendant told the victims, "if they closed the [garage] door before he left, he would shoot through the door and kill them." The Defendant took Wallace's cellular phone, the female teenage victim's video games, and fled the scene in the male teenage victim's car. MT called the police shortly after the Defendant left and reported the robbery.

---

[2] We acknowledge that we do not use titles when referring to every witness. We intend no disrespect in doing so. Judge John Everett Williams believes that referring to witnesses without proper titles is disrespectful even though none is intended. He would prefer that every adult witness be referred to as Mr. or Mrs. or by his or her proper title.

The next day, Officer Pinion of the Jackson Police Department (JPD) observed a car being driven without taillights, and as he read the tag to dispatch, he realized it was the same car that had been reported stolen from the Wallace home invasion robbery the night before. The dash cam video in Officer Pinion's vehicle, admitted as an exhibit at trial, recorded his encounter with the Defendant. Officer Pinion narrated the video for the jury at trial and explained that when he signaled for the Defendant to stop the car, the Defendant refused and led officers on an extensive high-speed chase. The Defendant eventually drove to a dead-end neighborhood where two passengers in the car got out and fled on foot. Officer Pinion then initiated his body cam recorder, which was also admitted as an exhibit and narrated for the jury.[3] Officer Pinion explained that the Defendant rammed a police car and appeared to have been stuck. However, as Officer Pinion approached the Defendant's car on foot, the Defendant put his head under the dashboard of the car and accelerated toward Officer Pinion. Officer Pinion feared for his life, pulled his firearm, and shot at the Defendant's car several times. The Defendant drove past Officer Pinion, narrowly missing him.

JPD Officer Terry Troutt apprehended the Defendant minutes later at a residence a few hundred yards away from the shooting. As Officer Troutt approached the Defendant on foot, the Defendant was knocking on a door to another home and told Officer Troutt he had been shot twice. Officer Troutt ordered him to lay on the ground until backup units arrived. A photograph of the Defendant on the ground was admitted into evidence at trial. Upon searching JH's car, officers recovered a stolen, black handgun from the driver's seat, a photograph of which was admitted at trial. Officer Troutt agreed that he did not observe the Defendant in the male teenage victim's car and he did not see who placed the gun on the driver's seat.

Each victim positively identified the Defendant in a police photographic line-up and at trial. They also testified that the weapon used during the robbery was a black handgun. On December 29, 2017, Wallace was shown a photographic line-up arranged by the police, but she was unable to definitively identify anyone. However, when officers showed Wallace larger, "blown-up" versions of the same photographs, Wallace identified the Defendant as the perpetrator of the offense. The photographic line-up as originally shown to Wallace and the larger versions of the same photographs were admitted as exhibits at trial. At the close of her testimony, she emphasized that she was certain the Defendant was the person who robbed her. Wallace recovered her cellphone following the Defendant's arrest.

The female teenage victim testified that she was within five feet of the Defendant during the robbery and was able to see his face clearly. On January 2, 2018, she was shown

---

[3] The record on appeal does not include the dash cam video or the body cam video.

a photographic line-up by the police and within "one minute" positively identified the Defendant as the perpetrator of the offense. She testified at trial that she was "absolutely certain" that the Defendant was the perpetrator. She agreed that she participated in the photographic line-up after her grandmother had done so and that she had spoken to her grandmother in the intervening time. Asked further on cross-examination if she considered being unable to leave the house as part of the robbery process, she agreed. On re-direct examination, she clarified that there was "another level of fear" added to the robbery when the Defendant ordered her to take off her clothes.

On December 29, 2017, the male teenage victim was shown a photographic line-up, and he too was unable to identify anyone until the photographs were enlarged. The photographic line-up upon which the male victim identified the Defendant as the perpetrator of the offense was admitted as an exhibit at trial. The male teenage victim testified that he felt an additional level of fear above what he would have felt in a simple robbery when the Defendant forced him to remove his clothes. On cross-examination, he conceded that he would not have felt free to leave the house, even if he still had his clothes on. He did not recover his car after the Defendant's arrest because it was "completely totaled" and riddled with bullets. His wallet containing his identification and credit cards, which was inside the car at the time of the offense, was recovered and returned to him by the police.

Sergeant Michael Thomas of the Jackson Police Department testified and explained the photographic line-up process that was conducted in this case. He said that the victims were shown the same set of photographs; however, the photographs were never arranged in the same order. He also testified that the male teenager's cellular phone, which was thrown from his car window by the perpetrator during the offense, was analyzed for fingerprints; however, none were found. The male teen victim's wallet was recovered near Medina High School on January 1, 2018, by a teacher, and turned over to the police. JPD Officer Chris Chestnut testified that he was present during each victims' photographic line-up identification. The victims were in separate rooms during the process, and the photographs were arranged in a different order for each victim.

The Defendant did not offer any proof at trial. The record shows the trial court properly instructed the jury, consistently with State v. White. 362 S.W.3d 559 (Tenn. 2012). Following deliberations, the jury convicted the Defendant as charged of aggravated burglary (count one), aggravated robbery (counts two, five, and six), especially aggravated kidnapping (counts three and four), and possession of a firearm during the commission of a dangerous felony (count seven). A sentencing hearing was conducted on February 14, 2019. The only proof offered by the State was the presentence report. The record does not show any objections filed by the defense to the report. However, during the hearing, defense counsel noted that the Defendant did not agree to one of the juvenile adjudications

listed in the report; specifically, an aggravated burglary amended to theft on December 29, 2015. The State did not object to excluding that adjudication from consideration in sentencing by the trial court. The presentence report as modified was admitted as an exhibit to the hearing. The trial court noted the applicable sentencing range for each of the offenses, and the parties agreed to the Defendant's classification as a Range I, standard offender.

The pre-sentence report showed that the Defendant, age seventeen at the time of the offenses at issue, had been raised primarily by his mother, who had recently passed away. The Defendant also self-reported that he had previously lived with his father, but he left because he did not get along with his father's wife. The Defendant had a good relationship with his brother and sister and had worked sporadically at a local tree company, a painting company, and a cleaning business. The report listed conflicting information regarding the Defendant's education. He reported to the juvenile authorities that he last attended school in Nashville in 2016; however, in this report he advised that he attended a technical school in Jackson, Tennessee, and dropped out only after the instant arrest. The Defendant self-reported that he had been suspended "numerous times," sent to alternative schools, and committed to three different youth development centers. The Defendant did not have any adult convictions; however, the report listed separate, pending charges of evading arrest with risk of death or injury, aggravated assault, and theft, stemming from the Defendant's encounter with Officer Pinion. The report further showed that the Defendant had his first court appearance at age twelve, and it contained fourteen juvenile court adjudications including unlawful possession of a weapon, theft of property, disrupting meeting, criminal impersonation, aggravated burglary, aggravated assault, and a prior violation of probation from 2013. The presentence report also contained victim impact statements from Wallace and her granddaughter, both of whom expressed lasting trauma from the home invasion robbery.[4]

The trial court increased the Defendant's sentence from the minimum in the applicable range because the Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and the Defendant had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114(1), (8), (10). The trial court considered the Defendant's prior juvenile adjudications and the instant offenses of conviction to support application of enhancement factor one. The court further noted the Defendant's juvenile history report reflected "at least two incidences. . . that were violations of parole;" however, it gave only slight weight

---

[4] A victim impact statement of the male teen victim's mother was also included in the report; however, the parties agreed not to consider it in sentencing.

to enhancement factor eight. The trial court declined to apply factor three, that the offense involved more than one victim, and further declined to mitigate the Defendant's sentence because of his youth or lack of substantial judgment in committing the offense. Tenn. Code Ann. § 40-35-113 (6). The court noted there was simply no evidence in support of factor six. The trial court expressly weighed the "catchall" mitigating factor and the fact that the victims were released alive against the other enhancement factors and determined that the Defendant was not entitled to a mitigated sentence.

The trial court imposed a sentence of five-years' imprisonment for the aggravated burglary; a concurrent term of ten-years' imprisonment for each count of aggravated robbery; a concurrent term of twenty-years' imprisonment for each count of especially aggravated kidnapping; and three-years' imprisonment for the possession of a firearm during the commission of a dangerous felony, to be served consecutively to the aggravated burglary as required by statute. In determining consecutive sentencing, the trial court noted that the Defendant had a juvenile record of extensive criminal activity, and that the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and had no hesitation about committing a crime in which the risk to human life is high. See Tenn. Code Ann. § 40-35-115(b) (2), (4). The trial court expressly noted consecutive sentencing was appropriate because the circumstances surrounding the commission of the offenses were aggravated and the aggregate length of the sentence reasonably related to the offenses for which the Defendant was convicted. The trial court then ordered the concurrent ten-year sentence for the aggravated robbery convictions to be served consecutively to the concurrent twenty-year sentence for the especially aggravated kidnapping convictions, for an effective sentence of thirty years' imprisonment.

The Defendant filed a motion for a new trial, which was denied by a written order on April 12, 2019. A timely notice of appeal was filed on April 18, 2019, and this case is now properly before this court for review.

## ANALYSIS

In challenging the sufficiency of the evidence as to each of his convictions, the Defendant contends that the State failed to establish his identity as the perpetrator of the offense. The Defendant additionally argues that the State failed to establish that the especially aggravated kidnappings offenses were not incidental to the aggravated robbery offenses. In response, the State contends that the evidence was sufficient to support each of the Defendant's convictions. We agree with the State.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279

S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this Court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this Court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

"The identity of the perpetrator is an essential element of any crime." State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving the identity of the defendant as the perpetrator beyond a reasonable doubt. State v. Cribbs, 967 S.W.2d 773, 779 (Tenn. 1998). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. Thompson, 519 S.W.2d at 793. "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)). The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. State v. Thomas, 158 S.W.3d 361, 388 (Tenn. 2005) (citing Strickland, 885 S.W.2d at 87).

In this case, each victim identified the Defendant in a photographic line-up and at trial. Although Wallace and the male teen victim were unable to definitively identify anyone from their initial smaller photographic line-up, each victim was certain of their identification of the Defendant as the perpetrator once the photographs were enlarged. Moreover, the female teen victim identified the Defendant within a minute of viewing the photographic line-up. At trial, each victim was certain of their in-person identification of the Defendant as the perpetrator of the offense. The Defendant is not entitled to relief as to this issue.

Next, the Defendant briefly argues that the State failed to prove that "the especially aggravated kidnappings were not incidental to the aggravated robberies" because the teenage victims testified that they did not feel free to leave despite the Defendant's order for them to remove their clothing. Citing State v. White, 362 S.W.3d 559 (Tenn. 2012), the Defendant essentially argues that the evidence is insufficient to sustain his convictions of especially aggravated kidnapping because the State failed to prove that the confinement or removal of the victims was greater than necessary to commit the offenses of aggravated robbery.

To sustain the convictions for especially aggravated kidnapping, the State was required to prove beyond a reasonable doubt that the Defendant knowingly removed or confined the victims so as to interfere substantially with the victim's liberty and that the removal or confinement was accomplished with a deadly weapon. See Tenn. Code Ann. §§ 39-13-302(a)(1), -305(a)(1). "When jurors are called upon to determine whether the State has proven beyond a reasonable doubt the elements of kidnapping, aggravated kidnapping, or especially aggravated kidnapping, trial courts should specifically require a determination of whether the removal or confinement is, in essence, incidental to the accompanying felony or, in the alternative, is significant enough, standing alone, to support a conviction." White, 362 S.W.3d at 578. The Court in White set forth the following jury instruction, which has since become part of the pattern jury instructions, and which the trial court used in regard to the especially aggravated kidnapping of the male and female teenagers in this case:

> To establish whether the defendant's removal or confinement of the victim constituted a substantial interference with his or her liberty, the State must prove that the removal or confinement was to a greater degree than that necessary to commit the offense of [insert offense], which is the other offense charged in this case. In making this determination, you may consider all the relevant facts and circumstances of the case, including, but not limited to, the following factors:

—the nature and duration of the victim's removal or confinement by the defendant;

—whether the removal or confinement occurred during the commission of the separate offense;

—whether the interference with the victim's liberty was inherent in the nature of the separate offense;

—whether the removal or confinement prevented the victim from summoning assistance, although the defendant need not have succeeded in preventing the victim from doing so;

—whether the removal or confinement reduced the defendant's risk of detection, although the defendant need not have succeeded in this objective; and

—whether the removal or confinement created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

Id. at 580-81 (footnote omitted).

Viewed in the light most favorable to the State, we conclude that the evidence was sufficient to support the Defendant's convictions of especially aggravated kidnapping. When the homeowner victim was unable to provide the Defendant with any money, he ordered her to the game room of her home and demanded that she fill the backpack with gaming items. As Wallace attempted to do so, the two teenage victims entered the room. The Defendant ordered the two teenage victims to remove their clothing and to remain in the game room with their hands up. After the Defendant had filled the backpack with the victims' property, the Defendant forced the unclothed victims to follow him to the laundry room and ordered them to stay in the room until he had left. While the victims may have subjectively felt no more confined than they would have in a "normal robbery," the jury could have reasonably inferred that the purpose of forcing the victims to disrobe was to prevent their summoning assistance or for the purpose of deterring any attempt to thwart the robbery. Accordingly, the removal or confinement of the victims was to a greater degree than that necessary to commit the offense of the aggravated robbery, and the Defendant is not entitled to relief.

The Defendant also challenges aspects of his sentence. Specifically, the Defendant argues the trial court failed to consider Tennessee Code Annotated § 39-13-305(b)(2), which provides that "[i]f the offender voluntarily releases the victim alive . . . , such actions **shall be** considered by the court as a mitigating factor at the time of sentencing." To the extent the Defendant suggests that the trial court was **required** to reduce his sentence based on the language of the statute, we disagree. The record shows that the trial court properly considered this mitigating factor in sentencing and found that it was outweighed by the

other enhancement factors submitted the State. The Defendant also argues, and the State concedes, that in ordering partial consecutive sentencing the trial court failed to make the necessary "dangerous offender" findings required under State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). Nevertheless, the State maintains that the order of consecutive sentencing was supported by the trial court's determination that the Defendant had an extensive record of criminal activity. We agree with the State.

Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. Tenn. Code Ann. § 40-35-115(a) (2006). The Tennessee Supreme Court has held, "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013). As relevant here, a trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant is an offender whose record of criminal activity is extensive. Tenn. Code Ann. § 40-35-115(b). An order of consecutive sentencing must also be "justly deserved in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1); see State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." Tenn. Code Ann. § 40-35-103(2); see Imfeld, 70 S.W.3d at 708.

The record shows that, at age twelve, the Defendant began to amass a series of juvenile court adjudications including unlawful possession of a weapon, theft of property, disrupting meeting, criminal impersonation, aggravated burglary, aggravated assault, and a prior violation of probation. This Court has held that "an extensive criminal history, standing alone, is enough to justify the imposition of consecutive sentencing." State v. Nelson, 275 S.W.3d 851, 870 (Tenn. Crim. App. 2008) (citing State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997)). Accordingly, imposition of consecutive sentencing was proper, and the Defendant is not entitled to relief.

## CONCLUSION

Based on the above authority and analysis, we affirm the judgments of the trial court.

_____
CAMILLE R. MCMULLEN, JUDGE